UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JESSICA COOK, *et al.*,

                          Plaintiffs,

    -against-                                      1:18-CV-0636 (LEK/DJS)

VILLAGE OF HOOSICK FALLS, *et al.*,

                          Defendants.

## DECISION AND ORDER

**I.    INTRODUCTION**

Plaintiffs initiated this action in April 2018 in New York state court. Dkt. No. 2 ("Complaint"). It is one of many filed in this District by residents of the Village of Hoosick Falls, New York (the "Village") against defendants Saint-Gobain Performance Plastics Corporation ("Saint-Gobain") and Honeywell International, Inc. ("Honeywell") alleging that their local manufacturing facility released dangerous amounts of Perfluorooctanoic Acid ("PFOA") into the Village's drinking water, soil, and ambient air. In this case, Plaintiffs allege that the Village is also responsible because it inadequately monitored and maintained its municipal water system and continued to distribute the water despite knowing it was dangerously contaminated. Compl. ¶ 91.

Plaintiffs' claims all arise under New York law, and Plaintiffs and the Village both reside in New York. Therefore, this case would appear to be outside the Court's jurisdiction, which covers state-law cases only when no plaintiff shares citizenship with any defendant. 28 U.S.C. § 1332. Nevertheless, Saint-Gobain removed this case to federal court. It asserts that it is "no[t] possib[le], based on the pleadings," to conclude that Plaintiffs timely notified the Village of their claims as required under New York law, Dkt. No. 22 ("Opposition") at 9 (quoting Pampillonia v.

1

RJR Nabisco, 138 F.3d 459, 461 (2d Cir. 1998))—even though the New York Supreme Court so concluded, Dkt. No. 1-2 ("State Court Decision"). Therefore, Saint-Gobain argues, the only proper defendants are Saint-Gobain and Honeywell, who reside outside New York, and the Court has diversity jurisdiction to hear this case.

After removing the case, Saint-Gobain, with Honeywell, filed a motion to dismiss, Dkt. No. 12 ("Motion to Dismiss"), and a motion to consolidate this case with the related actions, Dkt. No. 15 ("Motion to Consolidate"). Plaintiffs moved to remand. Dkt. No. 16 ("Remand Motion"). By agreement of the parties, the Court stayed briefing on the Motion to Dismiss. Dkt. No. 20 ("Stay Order") at 2. In addition, Saint-Gobain asked the Court to abstain from deciding the Remand Motion until the New York Supreme Court's Appellate Division decides the Village's state court appeal. Dkt. 21 ("Cross-Motion to Abstain"). For the following reasons, the Cross-Motion to Abstain is denied, the Remand Motion is granted, and the case is remanded to state court. The Motions to Dismiss and to Consolidate are accordingly denied without prejudice, as the Court lacks jurisdiction to dismiss the case or consolidate it with others.

## II. FACTUAL BACKGROUND

Saint-Gobain has not submitted any evidence challenging the jurisdictional facts alleged in the Complaint. Therefore, for present purposes, the Court takes those allegations as true and draws all inferences they suggest in favor of Plaintiffs. See Fed. Ins. v. Tyco Int'l Ltd., 422 F. Supp. 2d 357, 391 (S.D.N.Y. 2006) ("When considering a motion to remand, the district court accepts as true all relevant allegations contained in the complaint and construes all factual ambiguities in favor of the plaintiff."); see also Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011) ("In reviewing a facial attack to the court's jurisdiction, we draw all facts—which we assume to be true unless contradicted by more specific allegations or

documentary evidence—from the complaint and from the exhibits attached thereto."). It also considers some documents outside the pleadings that are susceptible to judicial notice. La. Mun. Police Emps' Ret. Sys. v. Wynn, 829 F.3d 1048, 1063 (9th Cir. 2016). However, the jurisdictional facts must be viewed as they are "at the time when [the] defendant[s] file[d] the notice of removal," and later developments cannot confer jurisdiction. Blockbuster, Inc. v. Galeno, 472 F.3d 53, 57 (2d Cir. 2006).

The Village operates and maintains a municipal water system that serves approximately 95% of its 4,500 residents. Compl. ¶ 78. The wells serving it are about 500 yards from Saint-Gobain's (formerly Honeywell's) manufacturing facility at 14 McCaffrey Street in the Village—the primary source of the PFOA contamination. Id. ¶ 88. The allegations concerning the McCaffrey Street facility, the decades of PFOA discharges from it into the Village's soil, aquifer, and drinking water, and the effects on the Village's residents and their properties, are more fully described in related cases filed beginning in 2016. See, e.g., Andrick v. Saint-Gobain, No. 17-CV-1058, 2018 WL 3068056, at *2 (N.D.N.Y. June 21, 2018); Baker v. Saint-Gobain, 232 F. Supp. 3d 233, 239 (N.D.N.Y. 2017); Benoit v. Saint-Gobain, No. 16-CV-1057, 2017 WL 4331032, at *1 (N.D.N.Y. Aug. 16, 2017).

In essence, since at least the mid-2000s, studies have associated PFOA with an increased risk of various adverse health conditions, including high blood pressure, autoimmune disease, pregnancy complications, and kidney and testicular cancer. Compl. ¶ 60. However, the chemical was once widely used in the process of making stain and water-resistant fabrics and other materials, including Teflon. Id. ¶¶ 52, 74. In the years during which the Saint-Gobain and Honeywell operated the factory, their employees washed waste PFOA from the manufacturing

process down the drains, into the soil surrounding the facility, and into the underground wells and aquifers used for the Village's drinking water. Id. ¶¶ 70, 76.

The Village admitted in state court that "the potential health problems associated with PFOA exposure have been widely disseminated throughout the Hoosick Falls area . . . since 2015." State Ct. Decision at 3. From late 2014 to the middle of 2015, the Village conducted testing and found high levels of PFOA in the municipal water system—concentrations ranging from 150 to 662 parts per trillion ("ppt") (the EPA has advised against using water supplies with concentrations greater than 70 ppt). Compl. ¶¶ 81, 84. In October 2015, the EPA, learning the results, contacted the Village to "recommend[] that people not drink the water from the Hoosick Falls public water supply or use it for cooking." Id. ¶ 89. In Baker, the plaintiffs alleged that despite these test results and the EPA's recommendation, Village officials maintained that "the water was safe to drink," "minimized . . . the potential risk of PFOA" in it, and "downplay[ed]" the EPA's warning, "suggesting that whether or not an individual used municipal water was a matter of personal choice." No. 16-CV-917, Dkt. No. 9 ("Baker Complaint") ¶¶ 99–100.[1] They asserted that the Village's "laissez faire response" prompted the EPA to reiterate its warning. Baker, 232 F. Supp. at 239.

Saint-Gobain later entered an agreement with the Village to provide free bottled water to Hoosick Falls residents and installed a carbon PFOA filter system in the municipal water plant. Compl. ¶ 92. In January and February 2016, the New York Department of Environmental

---

[1] The Court takes judicial notice of the Baker plaintiffs' allegations "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." Glob. Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006). The existence of the allegations is relevant to the key question discussed later: when the Village first had "actual knowledge" of the "essential facts" of Plaintiffs' claims. Iserau v. Brushton-Moira Sch. Dist., 776 N.Y.S.2d 129, 131 (N.Y. App. Div. 2004).

4

Conservation ("DEC") and Governor Andrew Cuomo classified PFOA as a hazardous substance and the McCaffrey Street Facility as a state superfund site, recommending additional investigation and remedial measures to protect public health and drinking water supplies. Id. ¶¶ 95, 98.

Meanwhile, on January 14, 2016, the New York State Department of Health ("DOH") began to offer blood testing to Hoosick Falls residents. Dkt. No. 1-3 ("Defendant's Appellate Brief") at 9. Ultimately, over 2,000 individuals participated in the program, including Plaintiffs. Id. The testing revealed average PFOA levels of approximately 23–28 micrograms per liter (μg/l) of blood, id., which is over ten times the national average of 2.08 μg/l, Baker, 232 F. Supp. 3d at 240.[2] In mid-2016, Plaintiffs Holbrook, Peckham, and Cook learned that they had levels of 31.1, 85.7, and 22 μg/l, respectively. Def's App. Br. at 9. Plaintiffs allege the contamination of their potable water also reduced their property values and ability to obtain mortgages. Compl. ¶¶ 104–105.

On May 3, 2017, Plaintiffs filed an application to file late notices of their claims ("Notices") against the Village, claiming the Village's negligent maintenance of its water system contributed to the high PFOA levels in their blood, its associated health effects, and the drop in their property values. State Ct. Decision at 2. On September 13, 2017, over the Village's objection, the New York Supreme Court granted the application. Id. at 5. The Village appealed to the Supreme Court's Appellate Division, Third Department. Def's App. Br. at 1. Meanwhile, on September 13, 2017, Plaintiffs served their Notices on the Village. Compl. ¶¶ 26, 29, 32.

---

[2] The Baker Complaint provides higher numbers for the sample size and the average blood levels of participants in the DOH testing. Baker Compl. ¶¶120, 127.

On April 3, 2018, after exhausting their administrative remedies, Plaintiffs filed this case in the New York Supreme Court for Rensselaer County. Compl. The present motions followed.

## III. LEGAL STANDARD

A defendant may remove cases reasonably seeking over $75,000 and alleging only state-law claims, such as this one, to federal court if: (1) the parties are completely diverse, meaning that none of the plaintiffs are from the same state as any defendant, 28 U.S.C. § 1332, and (2) none of the defendants who were "properly joined and served . . . is a citizen of the State in which such action is brought," § 1441(b). Thus, a clever plaintiff, hoping to keep her case in her home state court, may attempt to add an in-state defendant. But she "may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy." Pampillonia, 138 F.3d at 460–61.

"In order to show that a defendant was fraudulently joined to defeat removal, it is not sufficient to argue that the complaint fails to state a claim against that defendant." Stan Winston Creatures, Inc. v. Toys "R" Us, Inc., 314 F. Supp. 2d 177, 182 (S.D.N.Y. 2003). Rather:

> [T]he defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court.

Pampillonia, 138 F.3d at 461. Therefore, "the federal court must engage in an act of prediction: is there any reasonable possibility that a state court would rule against the non-diverse defendant?" Poulos v. Naas Foods, Inc., 959 F.2d 69, 73 (7th Cir. 1992). "All factual and legal ambiguities" must be "resolved in favor of" remand, Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 302 (2d Cir. 2004); "[i]f state case law or legislation removes all reasonable possibility that the plaintiff would be permitted to litigate the claim, then remand must be denied," but "[i]f the answer is doubtful, that doubt must be resolved in favor of the plaintiff and

6

the case must be remanded." Kuperstein v. Hoffman-Laroche, Inc., 457 F. Supp. 2d 467, 471 (S.D.N.Y. 2006).

IV. **DISCUSSION**

As indicated earlier, Saint-Gobain argues that Plaintiffs cannot prevail against the Village because they failed to timely serve it notices of their claims. Under New York law, as a precondition to suit, a prospective plaintiff must serve a municipality with notice of her claim within ninety days after the claim accrues. N.Y. Gen. Mun. Law § 50-e(5). Under New York's "discovery rule," a tort claim based on the "latent effects" of a person or property's "exposure to any substance" accrues on the date the plaintiff discovers (or should have discovered) "the primary condition on which the claim is based" or the "manifestations or symptoms of the latent disease that the harmful substance produced." N.Y.C.. D.E.S. Litig., 678 N.E.2d 474, 475, 478 (N.Y. 1997); see also Bluitt v. Ridge Fire Dist., 646 N.Y.S.2d 553, 554 (N.Y. App. Div. 1996) (using discovery rule to trigger period for filing § 50-e(5) Notice). For the purposes of this motion, the Court assumes Plaintiffs' present claims accrued—starting the ninety-day clock—in mid-2016, when they discovered the abnormal levels of PFOA in their blood, Def's App. Br. at 9. See Larkin v. Rochester Hous. Auth., 916 N.Y.S.2d 694, 696 (N.Y. App. Div. 2011) (holding that Plaintiff's sworn statement that she discovered elevated levels of lead in her blood within ninety days before serving Notice sufficed to survive summary judgment on limitations defense). Saint-Gobain has not argued otherwise.[3]

---

[3] In arguing that Plaintiffs lacked a reasonable excuse for delaying their Notices, Saint-Gobain does point out that Peckham previously sued on March 10, 2016, before her blood test, and later voluntarily dismissed her complaint. Opp'n at 13 (citing Tifft v. Saint-Gobain, No. 16-CV-292 (N.D.N.Y.), ECF Nos. 1, 46). But Saint-Gobain's brief does not mention the discovery rule or cite any authority suggesting that Peckham's lawsuit, or others filed by her attorneys, were sufficient to notify plaintiffs Cook and Holbrook of *their* claims against the Village.

7

"The purpose of the statutory notice of claim requirement is to afford the public corporation an adequate opportunity to investigate the circumstances surrounding the accident and to explore the merits of the claim while information is still readily available." Quinones v. City of New York, 74 N.Y.S.3d 602, 603 (N.Y. App. Div. 2018). When that purpose is served, the statute "should not operate as a device to defeat the rights of persons with legitimate claims." Annis v. N.Y.C. Transit Auth., 485 N.Y.S.2d 529, 531 (N.Y. App. Div. 1985). Accordingly, in cases alleging non-fatal injury to a person or property, the New York Supreme Court may extend the ninety-day deadline if the municipality knew the "essential facts" underlying the claim within the ninety days "or within a reasonable time thereafter" and there is no "compelling showing" that the late notice has "substantially prejudiced the [municipality's] ability to defend the claim on the merits." Isereau v. Brushton-Moira Sch. Dist., 776 N.Y.S.2d 129, 131–132 (N.Y. App. Div. 2004). A court must also consider "the reason for the [plaintiff's] delay." Id.

The New York Supreme Court weighed these factors when it authorized Plaintiffs to serve the Village late Notices. State Ct. Decision at 4–5. "It is well settled" in the New York courts "that absent a clear abuse of discretion, the Supreme Court's determination of an application for leave to serve a late notice of claim will not be disturbed" on appeal. Isereau, 776 N.Y.S.2d at 131.

### A. Cross-Motion to Abstain

Saint-Gobain argues that "[b]ecause the Third Department's decision in the Village's pending appeal will conclusively determine the propriety of joinder in this action—and therefore the Court's jurisdiction—th[is] Court should . . . abstain from deciding the remand motion . . . pending resolution of that appeal." Opp'n at 14. In support, Saint-Gobain cites La. Power & Light Co. v. City of Thibodaux, in which the Supreme Court held that federal courts sitting in

diversity should abstain from cases presenting "decisive" and unanswered questions of state law implicating a fundamental state "sovereign prerogative," such as the authority to exercise eminent domain. 360 U.S. 25, 27–28 (1959). It also cites Goldberg v. Carey, in which the Second Circuit found abstention appropriate to give the state court an opportunity to adopt a limiting construction of an unclear state statute that could save it from unconstitutionality. 601 F.2d 653, 655–59 (2d Cir. 1979). The abstention doctrines applied in these cases are designed to avoid "wast[ing] judicial resources [and] provok[ing] needless collision[s] between state and federal power." Id. at 658. Saint-Gobain argues that deciding the Remand Motion now may improperly influence the state Appellate Division and would therefore "prejudice the merits" of the state court appeal. Opp'n at 14–15. In addition, it argues that a decision to remand the case or retain jurisdiction would waste judicial resources; if the Appellate Division reverses, Saint-Gobain would just remove the case again, as 28 U.S.C. § 1446(b)(3) (it assumes) allows.[4] Therefore, Saint-Gobain asserts that the Court should, as in Thibodaux and Goldberg, "retain jurisdiction but [] abstain from exercising it." Goldberg, 601 F.2d at 656.

However, the Court cannot accept and stay a case over which it lacks jurisdiction. See 28 U.S.C. § 1447(c) (instructing that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded"). Even if it could, Saint-Gobain cites no valid reason to abstain. It identifies no special state "sovereign prerogative" (such as eminent domain) at issue. Thibodaux, 360 U.S. at 28. Plaintiffs' claims do not, as in Thomas v. New York City, implicate the state's "compelling interest in cases involving determinations of parental rights and custody" being litigated in state family court. 814 F. Supp.

---

[4] "[A] notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an . . . order or other paper from which it may first be ascertained that the case is one which is or has become removable." § 1446(b)(3).

1139, 1150 (E.D.N.Y. 1993). Nor is this a constitutional challenge to "a state statute, not yet construed by the state courts, which is susceptible of one construction that would render it free from federal constitutional objection and another that would not," as in Goldberg, 601 F.2d at 658, or Pineman v. Oechslin, 637 F.2d 601, 605 (2d Cir 1981) (abstaining deciding constitutional challenge to state statute that reduced state employees' pension benefits until the state court decided whether the plaintiffs' pension rights had vested under state common law, reasoning that "the fixing of compensation benefits to state employees is of vital importance to the State and its governmental functioning").

In any event, there is no reason to wait; the Third Department's decision will not "conclusively determine . . . the Court's jurisdiction," Opp'n at 14, because it will not decide whether Plaintiffs' claims against the Village were realistic "at the time when the defendant[s] file[d] the notice of removal." Blockbuster, 472 F.3d at 56–57. Even if the state court reverses, and effectively dismisses the claims against the Village, its decision would not answer the question before this Court: whether Plaintiffs should have predicted the dismissal when they brought this case (or at least by the time Saint-Gobain removed it). If there was a "reasonable possibility" when this case was removed that the claims against the Village would succeed, the Court would lack jurisdiction and would have to remand. Pampillonia, 138 F.3d at 461. As the district court held in Vasura v. Acands, "[i]t is not relevant in determining the propriety of removal—which is measured as of the date of removal—that diversity was later created by dismissal of the non-diverse defendant." 84 F. Supp. 2d 531, 535–36 (S.D.N.Y. 2000).

In some cases, when a lack of complete diversity at removal remains unnoticed until after discovery, trial, or final judgment, courts have found that post-removal developments cured the problem, and that they retained jurisdiction. See Caterpillar Inc. v. Lewis, 519 U.S. 61, 75–78

10

(1996) (finding remand to state court inappropriate where non-diverse defendant settled and was dismissed from the case before final judgment entered, reasoning that "considerations of finality, efficiency, and economy [had] become overwhelming"); In re Methyl Tertiary Butyl Ether Prod. Liab. Litig., 510 F. Supp. 2d 299, 319 (S.D.N.Y. 2007) (same "after three and a half years of intense and complex litigation"). In contrast, when the Appellate Division decides the Village's appeal, this case will still be at an "early stage," when "concern[s] for finality, efficiency, or economy" are weak. In re Methyl, 510 F. Supp. 2d at 319. Therefore, if the Village was properly joined at the time of removal, its post-removal dismissal could not save the case from remand.

Rather, deciding the Remand Motion now, with the facts as they were when Saint-Gobain removed the case, respects the state court's authority and minimizes unnecessary litigation in federal court. See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 488 F.3d 112, 124 (2d Cir. 2007) (explaining that the court must "resolve any doubts against removability" "out of respect for the limited jurisdiction of the federal courts and the rights of states"). Keeping cases in stasis to await post-removal decisions that might create jurisdiction would encourage defendants to "remove cases prematurely 'in the hope that some subsequent development, such as the eventual dismissal of non-diverse defendants, will permit th[e] case[s] to be kept in federal court.'" Vasura, 84 F. Supp. 2d at 535–36 (quoting Caterpillar, 519 U.S. at 77 (1996)). Defendants could stall discovery for months, without the state court's permission, in a federal court that lacks jurisdiction while they appeal unfavorable state interlocutory decisions. See § 1446(d) (stating that when a case is removed "the State court shall proceed no further unless and until [it] is remanded").[4] In addition, premature removal leads to unnecessary motion

---

[4] The Court assumes that while the removal divests the state trial court's jurisdiction over this case, it does not stop the Third Department from deciding the Village's appeal from the lower court's decision authorizing the late Notices. See Antine, 830 N.Y.S.2d at 436 (N.Y. Sup.

11

practice. In this case, for example, Plaintiff's already-briefed Remand Motion will become moot if the Third Department affirms (which, as Saint-Gobain admits, would mean the Village is a proper defendant, Opp'n at 14), and will require additional briefing on new issues if it reverses.[5] The Court views facts determining jurisdiction as of the time of filing "precisely because [they] are subject to change, and because constant litigation in response to that change would be wasteful." Grupo Dataflux v. Atlas Glob. Grp., L.P., 541 U.S. 567, 580 (2004). Defendants are, therefore, more appropriately encouraged not to attempt removal unless and until the grounds for it (here, the Village's dismissal) solidify. § 1446(b)(3) (stating that defendants may remove a case within thirty days of receiving an "order or other paper from which it may first be ascertained that the case . . . has become removable"). Accordingly, the Court will not stay the Remand Motion until the Village's appeal concludes.

**B.     Remand Motion**

---

Ct. 2006) (exercising jurisdiction to authorize late notices of claims despite lacking jurisdiction over claims themselves) (citing N.Y. Gen. Mun. Law § 50-e(7)).

[5] For example, even if the Third Department effectively dismisses the Village from the case, it will not necessarily make the case removable. Under the "usual rule . . . where [as here] the basis of removal is diversity," the parties must be diverse not only at the time of removal, but also when "[the] action was filed in state court." United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir. 1994); accord Chapman v. Crane Co., 694 F. App'x 825, 828 (2d Cir. 2017) ("Whether non-diverse parties were subsequently dismissed is of no moment . . . when diversity did not exist at the time of the original complaint."). As indicated above, this "usual rule" yields when the case "becomes removable" later. § 1446(b)(3). However, in most circuits, a defendant may not remove a complaint that named a non-diverse defendant simply because the state court later dismissed the claims against that defendant. Id.; Quinn v. Aetna Life & Cas. Co., 616 F.2d 38, 40 (2d Cir. 1980) (noting "the line of cases holding that, even under . . . 28 U.S.C. § 1446(b)[3], the involuntary dismissal of non-diverse parties does not make an action removable"); Wright & Miller, 14C Fed. Prac. & Proc. Juris. § 3723 (4th ed.). For this case to proceed in federal court, that issue (among others) would need to be resolved if the Third Department reversed, but would be moot if it affirms.

Reaching the Remand Motion, the Court finds that the Village is a proper party to this action, as there is "a reasonable probability that a state court would rule against" it to find that Plaintiffs' Notices were timely. Poulos, 959 F.2d at 73. Indeed, as indicated earlier, the New York Supreme Court already did so. State Ct. Decision at 5. Saint-Gobain asserts that that court "erred" and "the Third Department should reverse" because although the Village knew about the water contamination and the previous class action and other litigation against its co-defendants, it did not know that Plaintiffs, in particular, were injured and that the Village was responsible. Opp'n at 11. However, Saint-Gobain applies the wrong standard, which is not merely whether the state court "erred," but whether it erred beyond reasonable doubt. Kuperstein, 457 F. Supp. 2d at 471. And the New York Supreme Court's decision was more than reasonable.

As the United States Supreme Court has observed, the purpose of limitations periods like the one in § 50-e—to protect defendants from having to investigate and defend cold claims brought by dilatory plaintiffs, Quinones, 74 N.Y.S.3d at 603—are often served when a timely-filed class action raises substantially the same claims as an untimely class member's complaint. See Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 349 (1983). Thus, in Crown, Cork & Seal, the Court concluded that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action," id., at least as long as the claims "concern the same evidence, memories, and witnesses as the subject matter of the original class suit, so that the defendant will not be prejudiced," id. at 355 (Powell, J., concurring). First, the Court reasoned that a class complaint "notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment," and warns them "of the need to preserve evidence and witnesses

13

respecting the claims of all the members of the class." 462 U.S. at 353 (citing Am. Pipe & Const. Co. v. Utah, 414 U.S. 538, 553 (1974)). Second, class members who rely on a pending putative class action, as the drafters of Rule 23 intended, cannot be accused of sleeping on their rights. Id. The New York courts have adopted the American Pipe rule. Osarczuk v. Associated Univs., Inc., 12 N.Y.S.3d 286, 289 (N.Y. App. Div. 2015)

Plaintiffs do not contend that the Baker class action or other previously-filed cases tolled the statute of limitations for filing this case. But the first reason behind the American Pipe rule supports a finding that the prior litigation apprised the Village of the "essential facts" underlying Plaintiffs' claims. Isereau, 776 N.Y.S.2d at 131. Indeed, New York courts have authorized late Notices when the well-known accidents on which the plaintiffs' claims were based also injured a class of people who already filed similar claims. In Annis, for example, the plaintiff was hurt in a subway derailment that was "covered in the news media" and involved "scores" of "others who undoubtedly filed claims," notifying the Transit Authority that it should investigate the accident's causes and prepare to address passengers' claims arising from it. 485 N.Y.S.2d at 531. The New York Supreme Court later relied on Annis to authorize Notices to be served up to a year late in "hundreds" of cases brought by rescue and other workers exposed to toxic substances at the site of the World Trade Center collapse on September 11, 2001. Antine v. City of New York, 830 N.Y.S.2d 430, 439 (N.Y. Sup. Ct. 2006).

> [Given] the well-publicized allegations of toxic substances in the smoke and debris (despite well-publicized assurances by the federal government that the air quality met safety standards); the remarkably similar health claims of many workers . . . involved in the rescue, clearance, and transportation work related to the site and its debris; and the hundreds of other site workers' claims that the City did not provide them with appropriate respiratory and other protective equipment; it [was] not reasonable for the City to assert that [it] did not have notice of the nature and substance of th[e] [plaintiff's] claim within a reasonable time after the 90-day as-of-right filing period.

14

Id. at 173–74. The City, like the Transit Authority in Annis, knew the toxins had affected workers at the World Trade Center site, had timely received numerous claims asserting it was responsible for the exposure and accompanying health effects, and was already investigating the incident.

As in Antine and Annis, it is plausible that by early 2016, the Village knew that PFOA contaminated its water supply, knew its projected adverse health effects, and knew that a class of people—the 95% of its residents using the public water supply—had ingested it, accumulated it in their bloodstreams at dangerous levels, and were suing Saint-Gobain and Honeywell with "essentially the same claims," Opp'n at 8. See State Ct. Decision at 3; Compl. ¶¶ 78, 80–90, 97, 100–101. The Village also plausibly knew that Plaintiffs, Hoosick Falls residents, were among that class. Unlike in Antine and Annis, the plaintiffs in Baker and the other cases only sued the Village's co-defendants, whose facility (they allege) polluted the water. See 232 F. Supp. 3d at 236. However, it is reasonable to conclude that the Village knew of its obligations to protect the public water supply, and that it would be next. Compl. at ¶¶ 122–24. In addition, the Baker plaintiffs' accusations against the Village—that it told residents that the water was safe to drink and continued serving it despite knowing PFOA's dangers and EPA's warnings, Baker, 232 F. Supp. at 239—presaged Plaintiffs' claims based on the same conduct. Id. ¶ 91. Accepting these facts as true, it was reasonable for Plaintiffs to expect that the state court—cautioned to ensure that section 50-e does not become a technical "device" to stymie "legitimate claims" that the municipality is well-equipped to defend, Annis, 485 N.Y.S.2d at 531; Antine, 830 N.Y.S. at 174—would find that the Village knew the "essential facts" of Plaintiffs' claims, even if not the precise extent to which they were impacted, and would authorize their delayed lawsuit to proceed. Isereau, 776 N.Y.S.2d at 131.

Since the state court could reasonably find the Village had timely knowledge of Plaintiffs' injuries and their cause, the Village must present "compelling" evidence of "substantial prejudice." Isereau, 776 N.Y.S.2d at 131–132. "[T]he mere passage of time normally will not constitute substantial prejudice in the absence of some showing of actual injury," and "[g]eneric arguments and inferences will not establish 'substantial prejudice' in the absence of facts in the record to support such a finding." Newcomb v. Middle Country Cent. Sch. Dist., 68 N.E.3d 714, 720 (2016). As in Annis and Antine, the Village was already investigating and attempting to remedy the water contamination. Saint-Gobain does not provide any evidence—let alone compelling evidence—that Plaintiffs' belated Notices will prejudice the Village.

Instead, Saint-Gobain asserts that the Village had only "a generalized awareness that some sort of injury had occurred," or "mere notice of the underlying occurrence," but not knowledge of the "injuries or damages claimed," and that this is insufficient to show that it had "actual knowledge" of the "essential facts." In re Reinemann v. Vill. of Altamont, 978 N.Y.S.2d 402, 404 (N.Y. App. Div. 2013). In Reinemann, the plaintiff called the fire department because his furnace was malfunctioning. Id. at 403. To fix it, the firefighters "manipulated" the fuel supply valve. Id. Oil subsequently began leaking into the plaintiff's basement. Id. Although the fire department knew about the initial malfunction, it did not learn about the later oil leak or that the plaintiff was blaming the firefighters' "manipulation" until three to five months later. Id. at 414. In Lemma v. Off Track Betting Corp., another case on which Saint-Gobain relies, the municipal corporation's manager saw the plaintiff's "brief scuffle" with a corporation employee, but the plaintiff appeared to walk away uninjured. 707 N.Y.S.2d at 278 (N.Y. App. Div. 2000). The trial courts denied the plaintiffs leave to file late Notices, and the Third Department affirmed. Id. at 279; Reinemann, 978 N.Y.S.2d at 405. In this case however, as in Annis and

16

Antine but unlike in Reinemann and Lemma, the plaintiffs are members of a class that had already made substantially the same allegations, the municipality had learned the cause of the plaintiff's injuries (the contamination), and it was already investigating and seeking to remedy it before the ninety days expired.

Saint-Gobain also argues that the state court erred because it failed to consider Plaintiffs' excuse for waiting so long to serve the Notices. However, the Appellate Division has repeatedly held that "the absence of a reasonable excuse" for a plaintiff's delay "is not . . . fatal to the application," Matter of Porcaro v. City of New York, 799 N.Y.S.2d 450, 452 (N.Y. App. Div. 2005), when the defendant had actual knowledge and does not show prejudice with "compelling" evidence, Isereau, 776 N.Y.S.2d at 129. Finally, Saint-Gobain asserts that Plaintiffs submitted "only a superficial affidavit from [their] counsel" in support of their application to the state court, which is insufficient. Opp'n at 13. However, the New York Supreme Court also relied on numerous exhibits the Village provided, including the DOH's 2016 pamphlet on the health risks of PFOA and the report of the results of the agency's blood testing. State Ct. Decision at 5.

Therefore, Saint-Gobain has not met its burden to show "by clear and convincing evidence" that the Village has "no real connection with the controversy." Pampillonia, 138 F.3d at 460–61. Accordingly, this case must be remanded to the New York Supreme Court. § 1447(c).

## C. COSTS

Section 1447 provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." § 1447. However, "absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied."

17

Calabro v. Aniqa Halal Live Poultry Corp., 650 F.3d 163, 166 (2d Cir. 2011). Although the Court finds that Saint-Gobain improperly removed this case, it cannot conclude that it lacked an "objectively reasonable basis" for seeking removal. Id. Therefore, Plaintiffs' request for costs is denied.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Cross-Motion to Abstain (Dkt. No. 21) is **DENIED**; and it is further

**ORDERED**, that the Remand Motion (Dkt. No. 16) is **GRANTED**; and it is further

**ORDERED**, that Defendants' Motion to Dismiss (Dkt. 12) and the Motion to Consolidate (Dkt. 15) are **DENIED without prejudice for lack of jurisdiction**; and it is further

**ORDERED**, that this case is **REMANDED** to the Supreme Court of New York, County of Rensselaer; and it is further

**ORDERED**, that Plaintiffs' request for an award of costs is **DENIED**.

**IT IS SO ORDERED.**

DATED:     October 30, 2018
           Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge